[Nos. 59542-9; 59625-5.    En Banc.    March 17, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY S. WARD, *Appellant.*

JOHN DOE PAROLEE, *Appellant*, v. THE STATE OF WASHINGTON, *on the Relation of Norm Maleng, et al, Respondent.*

490

*Ronald D. Ness & Assoc.* and *Jeffrey J. Jahns*; Shafer, *Moen & Bryan, P.S.*, and *Robert S. Bryan*, for appellants.

*Norm Maleng, Prosecuting Attorney for King County*, and *Regina Cahan, Deputy; John W. Ladenburg, Prosecuting Attorney for Pierce County*, and *Barbara L. Corey-Boulet* and *Kyron Huigens, Deputies*, for respondent.

Guy, J. — Appellants Jeffrey Ward and John Doe seek review of superior court decisions holding the sex offender registration statute, RCW 9A.44.130-.140, which requires appellants to register as sex offenders with the local county sheriff, does not violate ex post facto, equal protection, or due process provisions under the United States and Washington Constitutions. We granted review and affirm both decisions.

## BACKGROUND

In 1989, then Governor Booth Gardner formed a task force to study community protection. *See* Governor's Task Force on Community Protection, *Final Report*, at I-1 (1989). As a result of the Task Force's recommendations, the Legislature passed the Community Protection Act of 1990. Laws of 1990, ch. 3. Part 4 of the act provides for the registration

of adult and juvenile sex offenders. Laws of 1990, ch. 3, §§ 401-409. The Legislature stated that its purpose in requiring registration was to assist local law enforcement, declaring:

> The legislature finds that sex offenders often pose a high risk of reoffense, and that law enforcement's efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders who live within the law enforcement agency's jurisdiction. Therefore, this state's policy is to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local law enforcement agencies as provided in [RCW 9A.44.130].

Laws of 1990, ch. 3, § 401. The requirement for sex offender registration, codified at RCW 9A.44.130-.140, became effective February 28, 1990. RCW 18.155.902(1). In 1991, the Legislature amended the statute to clarify and amend the deadlines for sex offenders to register. Laws of 1991, ch. 274, § 2.

The statute requires all persons residing in Washington who have been convicted of any sex offense, as defined by RCW 9.94A.030(29),[1] to register with the county sheriff in the county where the person resides. RCW 9A.44.130(1). When registering, the person must provide name, address, date and place of birth, place of employment, crime for which convicted, date and place of conviction, aliases used, and Social Security number. RCW 9A.44.130(2). Any person required to register under the statute who changes residence must either send written notice of the change of address to the county sheriff, if the person relocates within the same county, or reregister with the county sheriff in the new county, within 10 days of establishing the new residence. RCW 9A.44.130(4). The county sheriff must also obtain a photograph of the individual and a copy of the individual's fingerprints. RCW 9A.44.130(5). The county

---

[1] "Sex offense" for the purposes of RCW 9A.44.130, RCW 10.01.200, RCW 43.43.540, RCW 70.48.470, and RCW 72.09.330 means any offense defined as a sex offense by RCW 9.94A.030. RCW 9A.44.130(6).

sheriff must forward the information and fingerprints obtained to the Washington State Patrol for inclusion in a central registry of sex offenders. RCW 43.43.540. A person who knowingly fails to register is guilty of either a class C felony or gross misdemeanor, depending on the severity of the prior conviction. RCW 9A.44.130(7).

Each of the appellants was convicted of a sexual offense as defined in RCW 9.94A.030(29). The essential facts of each appellant's case are as follows:

Jeffrey S. Ward. On March 18, 1988, Jeffrey S. Ward was convicted of first degree statutory rape, which he committed in 1987, and was sentenced to 41 months in the Department of Corrections. Ward was released from custody on April 3, 1990. On May 7, 1990, Ward was advised by his community corrections officer that he was required to register as a sex offender pursuant to RCW 9A.44.130. Ward failed to register. On August 31, 1990, the Pierce County Prosecutor's office filed an information charging Ward with failure to register.

Ward moved to dismiss the charge, claiming the sex offender registration statute violated constitutional prohibitions against ex post facto laws. The Pierce County Superior Court denied Ward's motion, holding that the sex offender registration statute, retroactively applied to Ward, did not violate constitutional prohibitions against ex post facto laws because it is not punitive in purpose or effect. The court found Ward guilty of failing to register as a sex offender, sentenced him to 30 days' confinement, and assessed a fine of $178. Ward's sentence was stayed pending appeal. Ward appealed to the Court of Appeals, which certified Ward's appeal to this court pursuant to RAP 4.2. We accepted certification.

John Doe Parolee.[2] In 1980, John Doe pleaded guilty to and was convicted of first degree rape. The rape occurred in 1979. Doe was paroled on active supervision in late 1987, was conditionally released from supervision on June 21,

---

[2]Appellant brought this action under a pseudonym, claiming that public disclosure of his true name would effectively deprive him of the relief sought.

1991, and received his final discharge on September 1, 1992. On June 28, 1990, Doe received written notification from the Department of Corrections that he was required to register as a sex offender within 30 days. Because Doe had been convicted of a class A felony, his notice advised him that his registration obligation was for life. The Department also advised Doe that if he failed to register by the deadline, his parole officer would report Doe as having committed the felony of failing to register. Doe's parole would then be revoked and he would be returned to prison.

Doe commenced an action in King County Superior Court pursuant to RCW 9A.44.140(2), which provides that a person having a duty to register under RCW 9A.44.130 may petition the superior court to be relieved of that duty. Doe requested relief from the duty to register on the grounds that the statute as applied to him was an unconstitutional violation of the ex post facto, equal protection, and due process clauses of the federal and state constitutions. The King County Superior Court denied Doe's summary judgment motion and dismissed the action. The court concluded that the statute was applicable to Doe and did not violate ex post facto, equal protection, or due process clauses. Doe subsequently registered as a sex offender with the King County Sheriff. Doe appealed the Superior Court's decision to the Court of Appeals, and subsequently moved to transfer his appeal to this court and to consolidate it with State v. Ward. We granted Doe's motion.

### ISSUE

The central issue before us is whether the sex offender registration statute, RCW 9A.44.130-.140, retroactively applied to Ward and Doe, violates the prohibitions against ex post facto laws under the federal and state constitutions. We hold that the statute's requirement to register as a sex offender does not constitute punishment and therefore does not violate ex post facto prohibitions. We also conclude that the statute does not violate appellant Doe's equal protection or due process rights under the federal and state constitutions.

## ANALYSIS

Ward and Doe claim that the requirement to register as sex offenders under a statute that had not yet been enacted at the time they committed their offenses violates the prohibition against ex post facto laws of both the federal and state constitutions. In addition, Doe claims that the statute as applied to him violates the equal protection and due process clauses of the federal and state constitutions.

While appellants claim the sex offender registration statute violates provisions of both the state and federal constitutions, there is no suggestion that analysis under both constitutions should not be the same.

■ A statute is presumed constitutional and the party challenging it has the burden to prove it is unconstitutional beyond a reasonable doubt. *Diversified Inv. Partnership v. Department of Social & Health Servs.*, 113 Wn.2d 19, 23, 775 P.2d 947 (1989); *State v. Brayman*, 110 Wn.2d 183, 193, 751 P.2d 294 (1988).

## I

### Ex Post Facto Clause

■ The ex post facto clauses of the federal and state constitutions forbid the State from enacting any law which imposes punishment for an act which was not punishable when committed or increases the quantum of punishment annexed to the crime when it was committed. U.S. Const. art. 1, § 10; Const. art. 1, § 23; *see Weaver v. Graham*, 450 U.S. 24, 28-29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981); *In re Powell*, 117 Wn.2d 175, 184, 814 P.2d 635 (1991). As we noted in *In re Powell, supra*, " '[c]ritical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.' " *In re Powell, supra* at 184-85 (quoting *Weaver*, 450 U.S. at 30).

■ In *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798), the United States Supreme Court established the framework for ex post facto analysis. This framework,

known as the "*Calder* categories",[3] provides in relevant part that a law violates the ex post facto prohibition if it "*changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed." (Italics ours.) *Calder,* at 390. After *Calder,* the interpretation of the ex post facto prohibition was broadened to include any law which "*in relation to the offence or its consequences, alters the situation of a party to his disadvantage.*'" *Kring v. Missouri,* 107 U.S. 221, 228-29, 27 L. Ed. 506, 2 S. Ct. 443 (1882) (quoting *United States v. Hall,* 26 F. Cas. 84, 86 (C.C. Pa. 1809) (No. 15,285)), *overruled by Collins v. Youngblood,* 497 U.S. 37, 111 L. Ed. 2d 30, 110 S. Ct. 2715 (1990). In overruling *Kring,* the United States Supreme Court rejected such an expansive reading of the ex post facto clause. *Collins,* at 50. The effect of the *Collins* decision was to reestablish the *Calder* categories as the controlling definition of an ex post facto law. Applying the *Calder* categories, the Court summarized that a law violates the ex post facto clause if it (1) punishes as a crime an act previously committed, which was innocent when done; (2) makes more burdensome the punishment for a crime, after its commission; or (3) deprives one charged with a crime of any defense available according to the law at the time the act was committed. *Collins,* 497 U.S. at 42-43, 52 (citing *Beazell v. Ohio,* 269 U.S. 167, 169-70, 70 L. Ed. 216, 46 S. Ct. 68 (1925)). After *Collins,* the proper inquiry is not whether the law is a burden, or "disadvantageous" to the defendant, but whether it makes more burdensome the *punishment* for the crime.

---

[3]In *Calder,* Justice Chase expounded those legislative acts which in his view implicated the core concern of the *ex post facto* clause:

1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal ; and punishes such action. 2d. Every law that *aggravates* a crime, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*

(Italics ours.) *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648 (1798).

■ In *State v. Edwards*, 104 Wn.2d 63, 701 P.2d 508 (1985), we adopted the *Calder* Court's framework for ex post facto analysis. *Edwards*, at 70-71 (citing *Calder v. Bull, supra* at 390). *See also State v. Handran*, 113 Wn.2d 11, 14, 775 P.2d 453 (1989). However, we noted in *Edwards*, and reaffirmed in *Handran*, 113 Wn.2d at 14, that legislation further violates ex post facto prohibitions if it is made retroactive and *disadvantages* the offender. *Edwards*, at 71 (citing *Weaver v. Graham*, 450 U.S. at 29). In *In re Powell, supra* at 185, we restated the test for ex post facto analysis:

> A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) *disadvantages the person affected by it. See Weaver v. Graham, supra* at 29; *Collins v. Youngblood*, [497] U.S. [37], 111 L. Ed. 2d 30, 110 S. Ct. 2715 (1990).

(Some italics ours.) We do not depart from this pronouncement of the ex post facto test. However, in light of the Supreme Court's holding in *Collins v. Youngblood, supra*, we clarify that the sole determination of whether a law is "disadvantageous" is whether the law *alters the standard of punishment* which existed under prior law. *In re Powell*, 117 Wn.2d at 188; *Johnson v. Morris*, 87 Wn.2d 922, 927, 557 P.2d 1299 (1976); *State v. Taylor*, 67 Wn. App. 350, 354-55, 835 P.2d 245 (1992).

■ Taking the second part of the test first, we conclude that the sex offender registration statute is retrospective. It was enacted after Ward and Doe committed their offenses and it is being applied to them.[4] *See In re Powell*, 117 Wn.2d at 185; *Weaver*, 450 U.S. at 32-33. As to whether the statute is substantive or procedural, we assume, without deciding, that it is substantive.[5] We hold, however, that appellants are not "disadvantaged" by the statute because it

---

[4]Doe argues that the registration statute, by its terms, does not apply to him. We analyze Doe's argument under his due process claim *infra* at page 508.

[5]The requirement to register falls within RCW Title 9A, Washington's Criminal Code, and not RCW Title 10, Criminal Procedure, or RCW Title 4, Civil Procedure.

does not *alter the standard of punishment* which existed under prior law. While the requirement to register as a sex offender may indeed be burdensome, the focus of the inquiry is whether registration constitutes punishment. We conclude that it does not.

The ex post facto prohibition applies only to laws inflicting criminal *punishment. Johnson v. Morris*, 87 Wn.2d at 928; *In re Young*, 122 Wn.2d 1, 857 P.2d 989 (1993). To determine whether the sex offender registration statute is punitive or regulatory, we look first to the Legislature's purpose in adopting the law. *De Veau v. Braisted*, 363 U.S. 144, 160, 4 L. Ed. 2d 1109, 80 S. Ct. 1146 (1960); *Trop v. Dulles*, 356 U.S. 86, 96, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958). When it enacted the statute, the Legislature unequivocally stated that the State's policy is to "assist local law enforcement agencies' efforts to protect their communities by *regulating* sex offenders by requiring sex offenders to register with local law enforcement agencies as provided in [RCW 9A.44.130]." (Italics ours.) Laws of 1990, ch. 3, § 401. *See also* Laws of 1991, ch. 274, § 1.

Our inquiry, however, does not end with the Legislature's stated purpose. We also examine whether the actual *effect* of the statute is so punitive as to negate the Legislature's regulatory intent. *United States v. Ward*, 448 U.S. 242, 248-49, 65 L. Ed. 2d 742, 100 S. Ct. 2636 (1980). We turn to the factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554 (1963) for assistance in determining whether the effect of a statute is regulatory or punitive. *Ward*, 448 U.S. at 249; *In re Young*, 122 Wn.2d 1, 857 P.2d 989 (1993). These factors are:

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

(Footnotes omitted.) *Mendoza-Martinez*, 372 U.S. at 168-69. As the Arizona Supreme Court noted in *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217 (1992), a case involving retroactive application of Arizona's sex offender registration statute, the *Mendoza-Martinez* factors focus "appropriate attention on the effects of the registration requirement on convicted sex offenders and on the rationality between the requirement and its purported non-punitive function." *Noble*, at 175. These factors, however, are for use when conclusive evidence of legislative intent is unavailable. *Mendoza-Martinez*, 372 U.S. at 169. While the Legislature's regulatory intent is clear, we also conclude the *Mendoza-Martinez* factors weigh in favor of finding that the statute is regulatory and not punitive. We now examine in detail the four *Mendoza-Martinez* factors implicated by appellants' arguments.

1. Registration and Limited Disclosure as an Affirmative Disability or Restraint.

Appellants argue that because registration carries with it the right of law enforcement agencies to disseminate information to the public, the registration requirement amounts to a "badge of infamy". We disagree.

Registration alone imposes no significant additional burdens on offenders. The statute requires an offender to provide the local sheriff with eight pieces of information: name, address, date and place of birth, place of employment, crime for which convicted, date and place of conviction, aliases used, and Social Security number. In addition, the local sheriff must obtain two items: the offender's photograph and fingerprints. We note that at least one criminal justice agency routinely has all of this information on file at the time of an offender's conviction and sentencing. *See* RCW 10.97.030(1), (3). Thus, only if this information has changed since sentencing could registration require an offender to divulge information which is not already in the hands of the authorities.

We also find that the physical act of registration creates no affirmative disability or restraint. Collecting information about sex offenders in order to aid community law enforce-

ment does not restrain sex offenders in any way. *See, e.g., State v. Olivas*, 122 Wn.2d 73, 856 P.2d 1076 (1993) (upholding DNA testing of sex offenders for law enforcement purposes). Sex offenders are free to move within their community or from one community to another, provided they comply with the statute's registration requirements. RCW 9A.44.130(4); *see State v. Taylor*, 67 Wn. App. 350, 357, 835 P.2d 245 (1992) (requirement that registrants inform the county sheriff of their current residence does not impede or restrict movement in any way). Moreover, it is inconceivable that filling out a short form with eight blanks creates an affirmative disability. Registration alone imposes burdens of little, if any, significance.

Appellants contend, however, that the dissemination of registrant information creates hostile publicity and, ultimately, has a punitive effect on registrants. They direct our attention to the record which contains three sexual offender notification bulletins received by a resident of Mill Creek, and copies of five newspaper articles, all of which they assert are illustrative of the nature and impact of publicity. No such disclosure, though, appears to have occurred in appellants' cases. Nonetheless, we now examine whether the potential for disclosure of registrant information creates an affirmative disability or restraint.

We begin with the Washington State Criminal Records Privacy Act, RCW 10.97.010 *et seq.* Under RCW 10.97.050(1), criminal justice agencies may release criminal conviction records without restriction.[6] Therefore, the disclosure of conviction information cannot impose an additional burden. It is only where the criminal history record contains nonconviction data, or where the criminal justice agency discloses that the person is a registered sex offender, that dissemination will have the potential for creating an additional restraint.

---

[6]Because the criminal records privacy act, and RCW 10.97.050 in particular, took effect on June 21, 1977, it presents no ex post facto considerations here. Under RCW 10.97.050(7), any criminal justice agency which disseminates records of criminal history must document who received the information as well as what information was released.

We hold, however, that because the Legislature has limited the disclosure of registration information to the public, the statutory registration scheme does not impose additional punishment on registrants. The Legislature placed significant limits on (1) whether an agency may disclose registrant information, (2) what the agency may disclose, and (3) where it may disclose the information. The statute regulating disclosure, RCW 4.24.550, provides that "[p]ublic agencies are authorized to release relevant and necessary information regarding sex offenders to the public when the release of the information is necessary for public protection." RCW 4.24.550(1). The Legislature found that

> [o]verly restrictive confidentiality and liability laws governing the release of information about sexual predators have reduced willingness to release information that could be appropriately released under the public disclosure laws, and have increased risks to public safety. Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. Release of information about sexual predators to public agencies and *under limited circumstances*, the general public, will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is *rationally related to the furtherance of those goals.*
>
> Therefore, this state's policy as expressed in [RCW 4.24.550] is to require the exchange of relevant information about sexual predators among public agencies and officials and to authorize the release of *necessary and relevant* information about sexual predators to members of the general public.

(Italics ours.) Laws of 1990, ch. 3, § 116. The Legislature's pronouncement evidences a clear regulatory intent to limit the exchange of relevant information to the general public to those circumstances which present a threat to public safety.

The first limits to disclosure appear when an agency determines whether to disseminate registrant information. Because the Legislature clearly intended public agencies to disseminate warnings to the public "under limited circumstances", in many cases, both the registrant information and the fact of registration remain confidential. This cannot impose any additional burdens to that of registration.

██ For those cases which merit disclosure, the statute requires an agency to have some evidence that the offender poses a threat to the public or, in other words, some evidence of dangerousness in the future. The release of the registrant information must be "necessary for public protection". *See* RCW 4.24.550(1). We note that the statute, on its face, requires the disclosing agency to have some evidence that the offender poses a threat to the community. Absent evidence of such a threat, disclosure would serve no legitimate purpose. Therefore, we hold that a public agency must have some evidence of an offender's future dangerousness, likelihood of reoffense, or threat to the community, to justify disclosure to the public in a given case. This statutory limit ensures that disclosure occurs to prevent future harm, not to punish past offenses.

██ When disclosure is appropriate, the statute also limits what a public warning may contain. As stated above, the statute authorizes release only of "relevant and necessary" information. This standard imposes an obligation to release registrant information reasonably necessary to counteract the danger created by the particular offender. For example, release of an offender's Social Security number may be unnecessary in many cases, but critical where a potential employer must discover the offender's identity and criminal background. Furthermore, the statutory requirement of "necessary information" and, for that matter, the Legislature's primary goal of protecting the public, obligates the disclosing agency to gauge the public's potential for violence and draft the warning accordingly. An agency must disclose only that information relevant to and necessary for counteracting the offender's dangerousness.

Finally, the statute limits where an agency may disclose the registrant information. The Legislature dictated that disclosure must be "rationally related to the furtherance" of the goals of public safety and the effective operation of government. *See* Laws of 1990, ch. 3, § 116. Accordingly, the geographic scope of dissemination must rationally relate to the threat posed by the registered offender. Depending on

the particular methods of an offender, an agency might decide to limit disclosure only to the surrounding neighborhood, or to schools and day care centers, or, in cases of immediate or imminent risk of harm, the public at large. The scope of disclosure must relate to the scope of the danger. In addition, the content of a warning may vary by proximity: next-door neighbors or nearby schools might receive a more detailed warning than those further away from harm.

As the Legislature indicated, however, we leave to the appropriate agencies the specific decisions of whether, what, and where to disclose within the parameters outlined above. We find that the statutory limits on disclosure ensure that the potential burdens placed on registered offenders fit the threat posed to public safety. Any publicity or other burdens which may result from disclosure arise from the offender's future dangerousness, and not as punishment for past crimes. We conclude, therefore, that registration and limited public disclosure does not alter the standard of punishment which existed under prior law.

Our conclusion is supported by the Arizona Supreme Court's decision in *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217 (1992), a case involving retroactive application of that state's sex offender registration statute. Applying the *Mendoza-Martinez* factors, the *Noble* court concluded that Arizona's registration statute did not affirmatively inhibit or restrain an offender's movement or activities; that some courts have viewed registration acts as punitive; that registration will have some deterrent effect; and that the registration requirement serves a valid regulatory purpose. *Noble*, at 176-77. The court held that, on balance, Arizona's sex offender registration requirement was not punitive. *Noble*, at 178.

The Arizona and Washington statutes are not comparable in all respects. Unlike the Washington statute, the Arizona statute does not authorize dissemination of registration information to the general public. *See Noble*, at 176 n.8 (citing Ariz. Rev. Stat. Ann. § 41-1750(B)). The court noted

that the punitive effects of the statute were mitigated because outside of a few regulatory exceptions, registration information is kept confidential. *Noble*, at 178. This distinction does not alter our conclusion. The *Noble* court stated that the most significant factor in the case was its determination that the overriding *purpose* of Arizona's registration statute was to facilitate the location of child sex offenders by law enforcement personnel, a purpose unrelated to punishing the defendants for past offenses. *Noble*, at 178. We similarly find that the overriding purpose of RCW 9A.44.130 is to protect the public.

In *People v. Adams*, 144 Ill. 2d 381, 581 N.E.2d 637 (1991), the Illinois Supreme Court addressed the issue of whether the Illinois Habitual Child Sex Offender Registration Act imposed punishment for purposes of the Eighth Amendment prohibition on cruel and unusual punishment. The court concluded registration under the act did not constitute punishment. *Adams*, 581 N.E.2d at 641. The court found that the Legislature designed the statute to aid law enforcement agencies by providing ready access to location information of known offenders. *Adams*, 581 N.E.2d at 640.

Similar to the Arizona statute, the Illinois statute does not permit dissemination of registrant information to the general public. *Adams*, 581 N.E.2d at 640. The information supplied is to be held in confidence by the law enforcement agency; the unauthorized release of the supplied information is a class B misdemeanor. *Adams*, at 640 (citing Ill. Rev. Stat. 1987, ch. 38, ¶ 229 (1987)). Because registration information is generally withheld from the public, the court concluded that the duty to register does not attach any additional stigma to the offender; therefore, registration did not constitute punishment under the Eighth Amendment. *Adams*, 581 N.E.2d at 640-41.

While we agree with the holding in *Adams*, we depart from the court's analysis inasmuch as it implies that *any* dissemination of relevant and necessary information to the public is punitive. The *Adams* court did not analyze whether the effects of registration, including the potential

disclosure of registrant information to the public, were punitive. Indeed, the court noted that information concerning the registrant's criminal history is already available in the public record. *Adams*, 581 N.E.2d at 641. The Illinois court declined to analyze the *Mendoza-Martinez* factors, finding instead that legislative intent with respect to the registration act was clearly nonpenal. *Adams*, 581 N.E.2d at 641. Assuming arguendo that registration was punitive, the court proceeded to determine that registration was not cruel and unusual punishment since it was unlikely that any stigma would attach to the act of registration. *Adams*, 581 N.E.2d at 641. Although we concur in its holding, we do not find *Adams* dispositive on the issue advanced by appellants — that public stigma is a punitive *effect* of sex offender registration. Public stigma arises not as a result of registration nor as a result of release to the general public of information concerning a conviction. Any "badge of infamy" stigma that may exist arises from private reactions to the crime by members of the general public.

Appellants cite another Eighth Amendment case, *In re Reed*, 33 Cal. 3d 914, 663 P.2d 216, 191 Cal. Rptr. 658 (1983), for support. In *In re Reed, supra*, the petitioner was convicted of soliciting "lewd or dissolute conduct" and was ordered to register as a sex offender. *In re Reed, supra* at 917. Applying the *Mendoza-Martinez* factors, the California Supreme Court held that mandatory registration of sex offenders convicted under a misdemeanor disorderly conduct statute was an affirmative restraint and constituted punishment. *In re Reed, supra* at 920-22. Although the threshold determination in *In re Reed, supra*, was the same in this case — whether the duty to register as a sex offender constitutes punishment — the issue in *In re Reed, supra*, was whether the statute violated California's constitutional prohibition against cruel or unusual punishment. *In re Reed, supra* at 919. Critical to the court's decision was its finding that the "continuing penalty of sex offender registration is out of all proportion to the [misdemeanor] crime of which petitioner was convicted." *In re Reed, supra*

at 926. We do not find *In re Reed, supra,* dispositive on the issue of whether Washington's sexual offender registration statute is punitive. Unlike California's registration requirement, the Washington statute requires registration for *felony* sexual offenders only. RCW 9A.44.130(6); RCW 9.94A.030(29). Unlike the petitioner in *In re Reed, supra,* both Ward and Doe were convicted of felony sexual offenses.

In summary, we hold that registration as a sex offender does not create an affirmative disability or restraint. While registrant information may be released under limited circumstances to the general public, we conclude the appropriate dissemination of relevant and necessary information does not constitute punishment for purposes of ex post facto analysis.

2. Registration Historically Regarded as Punishment.

The second *Mendoza-Martinez* factor indicates that the statute is regulatory rather than punitive. Registration has not traditionally or historically been regarded as punishment. *See generally Lambert v. California,* 355 U.S. 225, 229, 2 L. Ed. 2d 228, 78 S. Ct. 240 (1957) (city ordinance requiring all felons to register was, at most, a law enforcement technique designed for the convenience of law enforcement agencies). Registration is a traditional governmental method of making available relevant and necessary information to law enforcement agencies. *See, e.g.,* RCW 46.20.205 (individuals who move after applying for and receiving a driver's license must notify the Department of Motor Vehicles of their change of address within 10 days); *State v. Olivas,* 122 Wn.2d 73, 856 P.2d 1076 (1993) (upholding DNA identification system statute, RCW 43.43.754); *Jones v. Murray,* 962 F.2d 302 (4th Cir. 1992) (statute requiring prisoners to donate blood samples for a DNA data bank is not punitive).

We note the *Noble* court found that registration traditionally has been viewed as punitive. *Noble,* at 176 (citing *In re Birch,* 10 Cal. 3d 314, 322, 515 P.2d 12, 110 Cal. Rptr. 212 (1973)). We disagree with the *Noble* court's conclusion on this point. We are not likewise persuaded by the *Birch*

court's description of sex offender registration as an "ignominious badge". *In re Birch, supra* at 322. The *Birch* court, like the court in *In re Reed, supra,* was confronted with the application of California's sex offender registration statute to one convicted of a misdemeanor. Washington's statute, unlike the California statute involved in *In re Birch, supra,* and *In re Reed, supra,* does not require sex offender registration for those convicted of misdemeanor offenses. None of the authorities cited by appellants persuades us that registration of felony sex offenders has been regarded historically as punishment. *See Noble,* at 178; *Adams,* 581 N.E.2d at 641.

3. Traditional Aims of Punishment.

The next relevant *Mendoza-Martinez* factor is whether the registration statute promotes the traditional aims of punishment. We acknowledge that a registrant, aware of the statute's protective purpose, may be deterred from committing future offenses. *See State v. Noble,* 171 Ariz. at 177. While deterrence is a traditional purpose of punishment, a registrant may be deterred from the fact of conviction and punishment *served,* whether he is required to register or not. *See State v. Taylor,* 67 Wn. App. at 357. Furthermore, the Legislature's primary intent is to aid law enforcement agencies' efforts to protect their communities by providing a mechanism for increased access to relevant and necessary information. Even if a secondary effect of registration is to deter future crimes in our communities, we decline to hold that such positive effects are punitive in nature.

4. Registration Is Not Excessive in Relation to Nonpunitive Purpose.

Under the final *Mendoza-Martinez* factor, the statute must not be excessive in relation to its nonpunitive purpose. We conclude the registration statute is not excessive in relation to its purpose.

██ Pursuant to article 1, section 1 of the Washington Constitution, the State Legislature may prescribe laws to promote the health, peace, safety, and general welfare of the people of Washington. *State v. Brayman,* 110 Wn.2d 183,

192-93, 751 P.2d 294 (1988). " '[B]road discretion is thus vested in the legislature to determine what the public interest demands under particular circumstances, and what measures are necessary to secure and protect the same.' " *Brayman,* at 193 (quoting *Reesman v. State,* 74 Wn.2d 646, 650, 445 P.2d 1004 (1968)). In this case, the Legislature has spoken clearly that public interest demands that law enforcement agencies have relevant and necessary information about sex offenders residing in their communities. Laws of 1990, ch. 3, § 401.

We are not persuaded by the argument that the registration statute would burden former offenders by making them the focus of every sex crime investigation. *See In re Reed,* 33 Cal. 3d at 920. "While a known sex offender living in a community where another sex offense occurs may well be a suspect, he has all of the due process and constitutional protections enjoyed by any other citizen and cannot be arrested simply because of his past conviction." *Taylor,* 67 Wn. App. at 358. *See Noble,* 171 Ariz. at 177 (registration does not diminish registrant's general right to be free from unconstitutional law enforcement practices); *Adams,* 581 N.E.2d at 641 (registrant's constitutional safeguards will still be in place). We recognize, however, that a registrant may be the subject of prearrest suspicion and investigation. *Taylor,* at 359 (Agid, J., dissenting). Such attention is incident to the conviction and not a result of registration as a sex offender.

We are likewise unpersuaded by the argument that Washington's registration requirement amounts to a lifelong "badge of infamy" for those convicted of sex offenses. Unlike the California statute, Washington's statute only requires registration of *felony* sex offenders. In addition, the duty to register under RCW 9A.44.130 ends 15 years after the last date of release from confinement, if any, for a person convicted of a class B felony and 10 years for a person convicted of a class C felony, provided that the person has not been convicted of any new offenses. RCW 9A.44.140(1)(b), (c). In all cases, including persons convicted of a class A

felony, adult sexual offenders may petition to the superior court to be relieved of the duty to register, and may be relieved of the duty to register if he or she shows, with clear and convincing evidence, that future registration will not serve the purposes of the statute. RCW 9A.44.140(2).

The Arizona and Illinois Supreme Courts held that their sex offender registration statutes are not excessive in relation to their nonpunitive, law enforcement purposes. *Noble*, at 177-78; *Adams*, 581 N.E.2d at 641-42. The fact that RCW 4.24.550 authorizes a broader release of registrant information than is allowed in Arizona and Illinois is not fatal to our holding in this case. The Washington Court of Appeals recently addressed the precise issue before this court: whether Washington's sex offender registration statute constitutes punishment in violation of ex post facto prohibitions. *State v. Taylor*, 67 Wn. App. 350, 835 P.2d 245 (1992); *In re Estavillo*, 69 Wn. App. 401, 848 P.2d 1335, *review denied*, 122 Wn.2d 1003 (1993). The Court of Appeals concluded in both cases that the statute is regulatory and does not constitute additional punishment in violation of ex post facto prohibitions. *Taylor*, at 358; *In re Estavillo, supra* at 404. The *Taylor* court analyzed similar arguments made to support the contention that the Washington statute is primarily punitive rather than regulatory. The court found the decision in *Noble* persuasive and concluded that while registration is disadvantageous to a registrant, "the disadvantages . . . are not sufficient as to make the registration statute punitive in overall effect." *Taylor*, at 358. We agree.

On balance, we conclude that the requirement to register as a sex offender under RCW 9A.44.130 does not constitute punishment. The Legislature's purpose was regulatory, not punitive; registration does not affirmatively inhibit or restrain an offender's movement or activities; registration per se is not traditionally deemed punishment; nor does registration of sex offenders necessarily promote the traditional deterrent function of punishment. Although a registrant may be burdened by registration, such burdens are an incident of the underlying conviction and are not

punitive for purposes of ex post facto analysis. We hold, therefore, that the community protection act's requirement for registration of sex offenders, retroactively applied to Ward and Doe, is not punishment. Thus, it does not violate ex post facto prohibitions under the federal and state constitutions.

## II

### Due Process

Doe[7] makes a threshold argument that the statute's registration requirement does not apply to him by its own terms. Doe correctly states that the 1990 statute provided that a sex offender register "within forty-five days of establishing residence in Washington, or if a current resident within thirty days of release from confinement, if any". Former RCW 9A.44.130(2). Doe argues that he could not register within 30 days of his December 1987 release from confinement because the statute did not yet exist. Doe contends, therefore, that the provisions of the statute do not apply to him. We disagree.

First, the statute explicitly states that "[a]ny adult or juvenile residing in this state who has been found to have committed or has been convicted of any sex offense shall register". RCW 9A.44.130(1). This definition applies to Doe — an adult residing in Washington who was convicted of a sex offense. Second, the statute defined "sex offense" to include those offenders like Doe who were released from custody but remained on active supervision on or after February 28, 1990. Former RCW 9A.44.130(5)(b).[8] *See also* Felver & Lieb, *Adult Sex Offender Registration in Washington*

---

[7]The equal protection and due process issues are not addressed by appellant Ward.

[8]In 1991, the Legislature amended the act to clarify and amend the deadlines for sex offenders to register. Laws of 1991, ch. 274, § 1. The Legislature stated that the act's clarification or amendment of RCW 9A.44.130 "does not relieve the obligation of sex offenders to comply with the registration requirements of RCW 9A.44.130 as that statute exists before [July 28, 1991]." Laws of 1991, ch. 274, § 1; RCW 9A.44.130(3)(d). The requirement to register as a sex offender applies to Doe.

*State: Initial Compliance, 1990,* Wash. State Inst. for Pub. Policy, Jan. 1991. Doe was under active supervision on February 28, 1990; thus, the statute applies to him. Having decided that the statute applies to Doe, we next discuss the merits of Doe's due process claim.

In 1980, Doe pleaded guilty to first degree rape. Doe argues that because he was not given written notification of the duty to register as a sex offender in his original plea form, the registration requirement breaches his plea agreement and thereby violates due process. Doe contends that the registration statute, if applicable to him, amounts to a more burdensome "hidden" parole term.

The federal and state constitutions require that a person shall not be deprived of life, liberty, or property without due process of law. U.S. Const. amends. 5, 14; Const. art. 1, § 3. Due process guaranties require that a plea bargain by a defendant be made intelligently and voluntarily. *Boykin v. Alabama,* 395 U.S. 238, 242-43, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). In addition to the minimum requirements imposed by the constitutions, criminal pleas are governed by rules of court. CrR 4.2(d) provides:

> The court shall not. accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and *the consequences of the plea.* The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

(Italics ours.)

A criminal defendant must be informed of all the direct consequences of his plea prior to acceptance of a guilty plea. *State v. Barton,* 93 Wn.2d 301, 305, 609 P.2d 1353 (1980). On the other hand, a defendant need not be advised of all possible *collateral* consequences of his plea. *Barton,* at 305; *State v. Mace,* 97 Wn.2d 840, 841, 650 P.2d 217 (1982). "The distinction between direct and collateral consequences of a plea 'turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment'." *Barton,* at 305

(quoting *Cuthrell v. Director*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005 (1973)); *see State v. Olivas*, 122 Wn.2d 73, 96, 856 P.2d 1076 (1993).

In *Barton*, we held that a habitual criminal proceeding is a collateral, and not a direct, consequence of a guilty plea. We stated that such a proceeding is a collateral consequence because: (1) it is not automatically imposed by the court in which the defendant has entered a plea of guilty, and (2) it cannot automatically enhance a defendant's sentence. A defendant's status as a habitual offender is determined in a subsequent independent trial in which the defendant has all the constitutional rights inherent in the right to trial by jury. *Barton*, at 305-06. We concluded in *Barton* that the defendant need not be advised of the possibility of a habitual criminal proceeding in the plea because any enhancement of defendant's sentence is a collateral, rather than a direct, result of defendant's guilty plea. *Barton*, at 306. Subsequent deportation and parole revocation proceedings have also been found to be collateral effects. *State v. Reid*, 40 Wn. App. 319, 323, 698 P.2d 588 (1985) (citing *State v. Malik*, 37 Wn. App. 414, 416, 680 P.2d 770, *review denied*, 102 Wn.2d 1023 (1984); *State v. Brown*, 29 Wn. App. 770, 778, 630 P.2d 1378, *review denied*, 96 Wn.2d 1013 (1981)). We recently held that mandatory DNA testing of sex offenders is a collateral consequence of the defendant's guilty plea. *State v. Olivas*, 122 Wn.2d 73, 98, 856 P.2d 1076 (1993).

■ Applying the *Barton* analysis to this case, we conclude there was no constitutional requirement to advise Doe of his duty to register as a sexual offender at the time of his guilty plea. Although the duty to register flows from Doe's conviction for a felony sex offense, it does not enhance Doe's sentence or punishment. "A defendant must understand the *sentencing* consequences for a guilty plea to be valid." (Italics ours.) *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988). As we concluded under our ex post facto analysis, registration as a sex offender does not alter the standard of punishment. Because registration as a sex offender does not

alter the standard of punishment, we hold the duty to register is a collateral, and not a direct, consequence of a guilty plea. *See State v. Perkins*, 108 Wn.2d 212, 218, 737 P.2d 250 (1987) (listing a defendant's name in a central registry of sex offenders under former RCW 26.44.070 was a collateral consequence of a plea). *But see In re Birch*, 10 Cal. 3d 314, 322, 515 P.2d 12, 110 Cal. Rptr. 212 (1973) (registration as a sex offender was a "grave and direct" consequence of defendant's guilty plea).[9]

Finally, Doe argues that he was not given written notice of the requirement to register as a sex offender pursuant to RCW 10.01.200. As part of the Community Protection Act of 1990, RCW 10.01.200 requires the sentencing court to include written notice of the registration requirements on any guilty plea, judgment, and sentence forms given to the defendant. The guilty plea form now notifies a defendant that the duty to register as a sex offender is a consequence of a defendant's guilty plea. CrR 4.2(g) statement para. (6)(p). These provisions were not complied with because Doe pleaded guilty to his sex offense before the law was enacted. Similarly, in *State v. Olivas, supra*, we held that the provisions of CrR 4.2(g) statement para. (6)(o), which gives a sex offender notice of the requirement to provide a blood sample for DNA testing, did not apply to appellants because they entered their guilty pleas prior to the effective date of the rule. *Olivas*, 122 Wn.2d at 97.

■ Moreover, the Legislature was clear that actual notice of the duty to register triggers the requirement to register. *See* RCW 9A.44.130(3)(c). Doe was given actual notice of the duty to register by the Department of Corrections in June 1990. Thus, the changes to the law do not

---

[9]The court's holding in *In re Birch, supra*, does not alter our conclusion under *Barton* that the duty to register as a sex offender is a collateral, and not a direct, consequence of a guilty plea. Unlike the situation in *In re Birch, supra*, Washington's sex offender registration statute was not in effect at the time Doe pleaded guilty to his sex offense. In addition, the *Birch* court viewed the defendant's lifelong duty to register as punitive, given his misdemeanor offense. As we have discussed, we do not likewise hold that registration of felony sex offenders is punitive.

alter our conclusion in this case, that registration is a *collateral* consequence of Doe's guilty plea. Doe suffered no loss of constitutional due process despite the fact that he was not advised of the duty to register prior to entering his guilty plea in 1980. Our holding in this case must not be construed to mean that the provisions of RCW 10.01.200 and CrR 4.2(g) statement para. (6)(p) are to be ignored. Quite the contrary. We hold only that this defendant suffered no constitutional deprivation or manifest injustice under the terms of his 1980 plea and the criminal procedures applicable at that time.

Because registration was a collateral consequence of Doe's plea, we find no violation of Doe's due process rights.

## III

### Equal Protection

For purposes of establishing registration deadlines, the statute distinguishes between convicted sex offenders who are under correctional supervision and those who are no longer under supervision. RCW 9A.44.130(3)(a)(i)-(iv) (formerly RCW 9A.44.130(5)). Only those who are under some form of supervision must register. Doe argues that the exemption of other sex offender population groups[10] from the statute violates his equal protection rights under the federal and state constitutions. We disagree.

Constitutional equal protection guaranties require similar treatment under the law for similarly situated persons. U.S. Const. amend. 14, § 1; Const. art. 1, § 12; *In re Mota*, 114 Wn.2d 465, 473, 788 P.2d 538 (1990). Where persons of different classes are treated differently, there is no equal protection violation. *Forbes v. Seattle*, 113 Wn.2d 929, 943, 785 P.2d 431 (1990).

---

[10]Doe argues that the alleged exemption of the following two population groups from the registration statute violates equal protection guaranties: (1) those individuals no longer on correctional supervision at the time of the enactment of RCW 9A.44.130; and (2) those who left the state before the registration deadline of the initial act and have since returned but who are no longer under correctional supervision by any jurisdiction at the time of their return.

■■ Traditionally we have used one of two tests to analyze an equal protection claim. Under the rational relationship test, the law being challenged must rest upon a legitimate state objective, and the law must not be wholly irrelevant to achieving that objective. *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992). The other test is strict scrutiny, under which the State's purpose must be compelling and the law must be necessary to accomplish that purpose. *Coria*, at 169. Strict scrutiny applies " 'if an allegedly discriminatory statutory classification affects a suspect class or a fundamental right.' " *Coria*, at 169 (quoting *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)). A statute that does not affect fundamental rights or create a suspect classification is subject to minimal judicial scrutiny under the rational basis test. *Seattle Sch. Dist. 1 v. Department of Labor & Indus.*, 116 Wn.2d 352, 362, 804 P.2d 621 (1991).

■■ Doe contends that the strict scrutiny standard applies because the registration statute results in significant impairment of a registrant's right to earn a livelihood and to own land and shelter. We reject Doe's unsupported assertion that the strict scrutiny standard should be applied in this case. Sex offenders are not a suspect class for purposes of equal protection review. *See generally In re Borders*, 114 Wn.2d 171, 177, 786 P.2d 789 (1990). Liberty interests alone are not sufficient to subject a statute to strict scrutiny. *State v. Danis*, 64 Wn. App. 814, 818-19, 826 P.2d 1096, *review denied*, 119 Wn.2d 1015 (1992). We conclude that Doe's challenge to the statute's classification of sex offenders is properly reviewed under the rational basis test.

■■ As discussed, the Legislature has broad discretion to determine what the public interest demands and what measures are necessary to secure and protect that interest. *State v. Brayman*, 110 Wn.2d at 193. A statute is a valid exercise of police power if it tends to promote a valid state interest and bears a reasonable and substantial relationship to accomplishing its purpose. *Brayman*, at 193. The state interest in this case is to assist local law enforcement by requiring sex offender registration. Doe challenges the Legis-

lature's classification decision in which it limited the registration requirement to those sex offenders in custody or on active supervision on or after February 28, 1990, as arbitrary. The State argues that this classification provides the Department of Corrections with a manageable number of sex offenders to notify and monitor. We are persuaded that the Legislature's classification is not arbitrary but is rationally related to the State's legitimate interest in assisting local law enforcement. *See, e.g., Forbes*, at 946. We hold that the classifications established in RCW 9A.44.130(3)(a) for the purposes of establishing the deadlines for sex offenders to register do not violate equal protection guaranties.

CONCLUSION

In conclusion, we hold that as applied to both Ward and Doe, the requirement to register as a sex offender is not punitive and therefore does not violate the ex post facto prohibitions of the federal and state constitutions. As to Doe, we reject his due process and equal protections claims. The judgments of the trial courts are affirmed.

UTTER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.

ANDERSEN, C.J. (concurring) — I am concerned lest the majority in "interpreting" the sex offender registration statute has rendered it, if not unworkable, then at least uncertain.

I agree with the majority opinion that the sex offender registration statute is constitutional. However, the majority opinion goes on (see discussion, majority opinion at 502-03) and, under the rubric of interpreting or construing the statute, imposes on public agencies the obligation to have "evidence of an offender's future dangerousness, likelihood of reoffense, or threat to the community" (majority, at 503) in order to justify disclosure to the public. That is both unworkable and unnecessary. The statute is plain and unambiguous on its face and therefore should not be subject

to judicial interpretation. *In re Williams,* 111 Wn.2d 353, 361, 759 P.2d 436 (1988); *State v. Roberts,* 117 Wn.2d 576, 584, 817 P.2d 855 (1991).

The statute clearly and expressly allows public agencies to authorize release of relevant and necessary information regarding sex offenders to the public "when the release of the information is necessary for public protection." RCW 4.24.550. I do not feel it is constitutionally necessary to add to the clear requirements of this statute, and to the extent such additions are not constitutionally mandated they constitute inappropriate "judicial legislation".

BRACHTENBACH, J., concurs with ANDERSEN, C.J.