# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54067-3-II |
| Respondent, | |
| v. | |
| DARREN RONELL SMITH, JR., | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — The trial court convicted Darren Smith Jr. of failure to register as a sex offender. On appeal, he argues that the application of the sex offender registration statutes in this case violated the ex post facto clauses of the Washington and United States Constitutions. He also argues that his conviction violates due process because it resulted from a mandatory sex offender registration requirement imposed on a juvenile without a hearing. We affirm, but remand to the trial court to strike the community custody supervision fee.

FACTS

In January 2001, Smith committed indecent liberties with forcible compulsion. He pleaded guilty in juvenile court to the charge at the age of fifteen. Smith is classified as a level one offender. As a result of that offense, Smith was required to register as a sex offender with the county sheriff's office. Smith repeatedly failed to register with the sheriff's office and has been convicted of failure to register at least four times, one of which occurred after the present case. In September 2018, Smith informed the sheriff that he was living without a fixed address. As a result, he was required to report in person to the sheriff's office weekly and provide a list of where he

stayed for the prior week as required by RCW 9A.44.130(6)(b). Smith's prior convictions for failure to register prevented him from petitioning for relief from the registration and reporting requirements under RCW 9A.44.143(3). Under this statute, he could petition for relief from the registration requirement once he lived in the community for 24 consecutive months without committing a disqualifying sex offense or failing to register. RCW 9A.44.143(3). Smith was unable to meet this requirement.

Smith failed to report weekly from September 24, 2018 to January 1, 2019. He was charged with failing to register as a sex offender and the trial court convicted him after a bench trial. This was Smith's third conviction for failure to register as a sex offender.

ANALYSIS

I.    STANDARD OF REVIEW

We review constitutional issues de novo. *State v. Boyd*, 1 Wn. App. 2d 501, 507, 408 P.3d 362 (2017). A statute is presumed constitutional and the party challenging it has the burden to prove beyond a reasonable doubt that the statute is unconstitutional. *State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994).

II.    EX POST FACTO

Smith argues that the registration requirements imposed after he was sentenced for indecent liberties violate the ex post facto clause because they are punishment. We disagree.

A.    Statutory Sections

Under RCW 9A.44.130(6)(b), sex offenders without a fixed address must report in person weekly with the county sheriff's office. This subsection was modified in May 2001 to require weekly reporting for all offender levels. LAWS OF 2001, ch. 169, § 1. It now states:

> A person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered. The weekly report shall be on a day

specified by the county sheriff's office, and shall occur during normal business hours. The person must keep an accurate accounting of where he or she stays during the week and provide it to the county sheriff upon request. The lack of a fixed residence is a factor that may be considered in determining an offender's risk level and shall make the offender subject to disclosure of information to the public at large pursuant to RCW 4.24.550.

RCW 9A.44.130(6)(b).

Failure to comply with RCW 9A.44.130(6)(b) may lead to public notice under RCW 4.24.550. Under RCW 4.24.550, different levels of offender are subject to different public disclosures. For level I offenders, RCW 4.24.550(3)(a) states:

Except for the information specifically required under subsection (5) of this section, local law enforcement agencies shall consider the following guidelines in determining the extent of a public disclosure made under this section: (a) For offenders classified as risk level I, the agency shall share information with other appropriate law enforcement agencies and, if the offender is a student, the public or private school regulated under Title 28A RCW or chapter 72.40 RCW which the offender is attending, or planning to attend. The agency may disclose, upon request, relevant, necessary, and accurate information to any victim or witness to the offense, any individual community member who lives near the residence where the offender resides, expects to reside, or is regularly found, and any individual who requests information regarding a specific offender.

Subsection (5) of RCW 4.24.550 also requires the publication of level I offenders on a website when they are out of compliance with RCW 9A.44.130.

B.      Constitutional Principles

The ex post facto clauses of the federal and state constitutions forbid the State from punishing an act which was not a crime when committed and from retroactively increasing the punishment of a crime after it was committed. U.S. CONST. art. 1, § 10; WASH. CONST. art. 1, § 23; *Ward*, 123 Wn.2d at 496. The ex post facto clause guarantees "'fair notice and government restraint'" when the State increases punishment for crimes. *Ward*, 123 Wn.2d at 496 (quoting *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991)). The ex post facto clause applies only to laws inflicting criminal punishment. *Ward*, 123 Wn.2d at 499.

Over a series of cases, the United States Supreme court created a framework for evaluating ex post facto claims, which has also been adopted to evaluate the same claims under the Washington Constitution. *Id*. at 497-98. "'A [criminal] law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) disadvantages the person affected by it.'" *Id*. at 498 (emphasis omitted) (quoting *Powell*, 117 Wn.2d at 185). If the court determines that the law is substantive and retrospective, it must determine whether it is disadvantageous. *Ward*, 123 Wn.2d at 498. A disadvantageous law increases the standard of punishment which existed prior to its enactment. *Id*. at 498.

To determine whether a law increases the standard of punishment for purposes of the third *Ward* factor above, *Ward* instructs that we examine the law under *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). *Ward*, 123 Wn.2d at 499. First[1], we examine the legislature's intent to determine whether the legislature was punishing or regulating conduct. *Ward*, 123 Wn.2d at 499. Even if the legislature stated a law was intended to regulate conduct, we must determine whether "the actual effect of the law is so punitive as to negate the Legislature's regulatory intent." *Id*. (emphasis omitted). We do this by evaluating the law under four factors, determining (1) "'[w]hether the sanction involves an affirmative disability or restraint'"; (2) "'whether it has historically been regarded as a punishment'"; (3) "'whether its operation will promote the traditional aims of punishment—retribution and deterrence'"; and (4) "'whether it appears excessive in relation to the alternative purpose assigned.'" *Id*. (quoting *Mendoza-Martinez*, 372 U.S. at 168-69. If after examining the legislature's intent and the effect of the law

---

[1] The reader will note that this analysis is conducted *within* the third *Ward* factor.

under the four factors above, we conclude the law increases the standard of punishment, it would then be disadvantageous under the third *Ward* factor.

In *Ward*, the court analyzed an earlier version of RCW 9A.44.130 and concluded that the law did not violate the ex post facto clause. 123 Wn.2d at 499. Following the United States Supreme Court's example in *Mendoza-Martinez*, the court first determined the legislature's intent was to regulate conduct, not punish. *Ward*, 123 Wn.2d at 499. Next, under the ex post facto framework, the court determined that registration requirements are substantive and assumed the requirements are retrospective. *Id.* at 498-99. However, the court determined that while the law did burden released sex offenders, it did not increase the standard of punishment under the *Mendoza-Martinez* factors and was therefore not disadvantageous to Ward. *Id.* at 499.

Two cases of this court addressed the current version of RCW 9A.44.130. *See State v. Enquist*, 163 Wn. App. 41, 256 P.3d 1277 (2011); *Boyd*, 1 Wn. App. 2d 501. *Boyd* examined the reporting and disclosure requirements by conducting an analysis under the *Mendoza-Martinez* factors. *Boyd*, 1 Wn. App. 2d 510-13. The court relied on the analysis in *Ward* and concluded that the increased reporting and disclosure requirements did not increase the standard of punishment and therefore did not violate the ex post facto clauses of the United States or Washington Constitutions. *Id.* at 513.[2]

C.  Analysis

Smith ask us to distinguish *Boyd* by arguing that unlike the offender in that case, Smith was a juvenile offender. Smith cites to extensive evidence that such requirements have a disproportionate impact on juvenile offenders. Contrary to Smith's argument, *Boyd* unequivocally

---

[2] *Enquist* also concluded the amended RCW 9A.44.130(6)(b) did not violate the ex post facto clause but did not analyze the issue under the *Mendoza-Martinez* factors, instead relying on *Ward*. *See Enquist*, 163 Wn. App. at 49.

holds that the amended reporting and disclosure requirements do not violate the ex post facto clauses of the United States and Washington Constitutions. 1 Wn. App. 2d at 513. However, because *Boyd* did not involve a juvenile offender, we address Smith's claim that *Boyd* is inapplicable here because Smith was sentenced as a juvenile.

Smith cites to ample legal authority that addresses juvenile criminal culpability and punishment. *See Roper v. Simmons*, 543 U.S. 551, 578-79, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (holding capital punishment against minors is unconstitutional under the Eighth Amendment to the United States Constitution); *State v. O'Dell*, 183 Wn.2d 680, 695-98, 358 P.3d 359 (2015) (holding youthfulness may mitigate a defendant's culpability and therefore is an acceptable mitigating factor justifying sentences below standard range under the sentencing statutes); *Miller v. Alabama*, 567 U.S. 460, 479, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (holding sentencing a minor to prison without the possibility of parole violates the Eighth Amendment's probation on cruel and unusual punishment).

Those cases are inapplicable here both legally and factually because they addressed claims under the Eighth Amendment, Fourteenth Amendment, or various other sentencing statutes not at issue here. In this case, Smith did not bring his challenges under the Eighth and Fourteenth Amendments. That is, he does not ask us to hold that registration is cruel and unusual punishment as applied to juvenile offenders. While the issue here does address a sentencing statute, *O'Dell* is inapplicable because the present case does not involve discretionary factors, such as youth. Here, the registration requirement is mandatory and therefore youthfulness is not and cannot be considered when the post-release registration requirement is imposed. The circumstances from the cases Smith cites are also considerably different than those present with a sex offender

6

registration requirement. Most notably, the weekly registration requirement does not rise to the level of capital punishment or prison without the possibility of parole.

Smith spends much of his briefing exploring how registration affects juvenile offenders and why its purpose conflicts with juvenile justice. Indeed, he observes that the Washington Supreme Court has recognized the general impact that publicly available juvenile court records have "'objectively observable negative consequences, including denial of housing, employment, and education opportunities.'" Br. of Appellant at 17 (internal quotation marks omitted) (quoting *State v. S.J.C.*, 183 Wn.2d 408, 432, 352 P.3d 749 (2015)). The effect of public safety notices on juvenile offenders may be something that would cause the legislature to revisit this topic. But Smith provides no authority for the proposition that youthfulness or any characteristic of the defendant is relevant to an ex post facto analysis, the legal argument raised here. None of the law Smith cites overcomes the holdings in *Boyd*.

We recognize that the weekly reporting requirement arising from Smith's homelessness has had a tremendously negative impact on Smith's life and capacity to rehabilitate. Still, under *Ward* and *Boyd*, RCW 9A.44.130(6)(b) does not violate the ex post facto clause of the United States or Washington Constitution.

III.    DUE PROCESS

Smith argues that he was deprived of due process because the registration requirement does not serve the rehabilitative function of the juvenile court system. He also argues that because juvenile court has fewer constitutional protections than adult court, the juvenile court violated his right to due process when it convicted him of a crime that included mandatory registration. We disagree.

Under the Juvenile Justice Act, juvenile offenders are afforded fewer constitutional protections than adults because the purpose of juvenile court is to rehabilitate rather than punish. *State v. Chavez*, 163 Wn.2d 262, 267-68, 180 P.3d 1250 (2008). The rehabilitative function of juvenile court is reinforced by the more lenient punishments juveniles receive compared to their adult counterparts. *Id*. at 271. This leniency provides a counterbalance to the fewer constitutional protections afforded juvenile offenders.

Juvenile offenders are afforded due process protections, but the requirements to satisfy such protections are flexible. *State v. Watkins*, 191 Wn.2d 530, 537, 423 P.3d 830 (2018). The extent of the procedural requirements depend on the particular situation at issue. *Id*. "Compliance with procedural due process requires the court to identify the private interest affected by the official action, the risk of erroneous deprivation, the probable value of additional safeguards, and the State's interests." *Id*.

In Washington, adult sex offenders may petition the court to relieve them of the registration requirement after 10 or 15 years without committing a disqualifying offense, depending on the offense. *See* RCW 9A.44.142(1)(b), (c). By contrast, juvenile offenders may petition the court after only two years. RCW 9A.44.143(3).

Smith argues that he has an interest in not being subject to adult criminal laws. However, he was not subject to adult criminal laws. Smith had the opportunity to petition for relief after two years, eight years sooner than a comparable adult offender. *See* RCW 9A.44.142(1)(b), (c); RCW 9A.44.143(3). His argument fails.

Smith next argues that there is a high risk that he will be erroneously deprived of the rehabilitative guarantees of juvenile court by being subject to mandatory registration. Again, as a juvenile, he was subject to a considerably less lengthy registration duration than an adult offender.

The difference between being subject to registration for two years as a juvenile versus 10 as an adult recognizes the counterbalancing leniency of the juvenile justice system. Here, again, Smith's argument fails.

Smith also argues that the impact on the state would be minimal because his proposed procedure could be simple.[3] However, there is already a procedure by which a juvenile may seek relief from registration. *See* RCW 9A.44.143(3).

Lastly, Smith argues that the imposition of the registration requirement on juvenile offenders violates substantive due process. He goes on to argue that the registration requirement does not recognize the reduced criminal culpability of juvenile offenders. But his argument fails because the registration requirement here does recognize the reduced culpability of juveniles by imposing a significantly lessened registration duration of two years, versus 10 to 15 years for adults.

We conclude that the registration requirement did not violate Smith's right to due process.

IV.    LEGAL FINANCIAL OBLIGATIONS

Smith argues that the court erred when it imposed community custody supervision fees after determining he was indigent. The State concedes to striking the fees. It is within the State's discretion to decide not to pursue these fees from an indigent defendant. *See State v. Spaulding*, 15 Wn. App. 2d 526, 537, 476 P.3d 205 (2020) (acknowledging community supervision fees are discretionary). We therefore accept the State's concession.

---

[3] Smith recommends that each juvenile sex offender have a hearing before being placed on the sex offender registry.

CONCLUSION

The sex offender registration statutes do not violate the ex post facto clauses of the Washington and United States Constitutions. Nor does Smith's conviction violate due process. We affirm, but remand to the trial court to strike the community supervision fees from Smith's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Sutton, J.P.T.

_____
Glasgow, A.C.J.