2017 DEC 11 AM 10:02
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )  No. 74933-1-I
)
    Respondent, )
)  DIVISION ONE
    v. )
)
JAYSON LEE BOYD, )  PUBLISHED OPINION
)
    Appellant. )  FILED: December 11, 2017
)

MANN, J. — Jayson Boyd, a homeless man, was convicted a third time for failing to register as a sex offender and for bail jumping. Boyd appeals his conviction arguing that (1) the current sex offender registration statute, as applied, violates the ex post facto clause of the state and federal constitutions, (2) there was insufficient evidence to convict him of failure to register and bail jumping, (3) the trial court abused its discretion by denying his motion for a mistrial based on prosecutorial misconduct, and (4) the trial court incorrectly denied his proposed reasonable doubt instruction. We affirm.

## FACTS

In February 1998, when he was 23 years old, Boyd had sex with a 15 year old. On May 27, 1999, Jayson Boyd pleaded guilty to rape of a child in the third

degree. Boyd was sentenced on July 29, 1999. Boyd has not committed a sex offense since his original conviction. Nevertheless, he is required to register as a sex offender under RCW 9A.44.130 and RCW 9A.44.140. Since his conviction in 1999, Boyd has been convicted of failure to register as a sex offender three times, all in Skagit County.

Boyd is homeless, has a ninth or tenth grade education, and is mentally ill. At the time of his crime in 1998, homeless sex offenders were not required to register as sex offenders because they did not have addresses. RCW 9A.44.130 (1998); State v. Pickett, 95 Wn. App. 475, 478, 975 P.2d 584 (1999). The legislature subsequently amended RCW 9A.44.130 to require homeless sex offenders who lacked a fixed address to update the county sheriff weekly, in person, of their whereabouts. Laws of 1999, 1st Spec. Sess., ch. 6, §§ 1-3; former RCW 9A.44.130 (2000); former RCW 9A.44.130 (2011).

Boyd largely complied with the registration requirement but pleaded guilty to crimes of failure to register in 2009, 2010, and 2013. After his most recent release from confinement, Boyd has registered a change of address with the Skagit County Sheriff more than 20 times. Boyd registered as a transient on December 11, 2014, and checked in weekly for the next six weeks.[1] Boyd failed to check in with the sheriff during the last week of January and the first two weeks of February 2015.

---

[1] During the week of December 24, 2014, for example, the sheriff's Transient Tracking sheet shows that Boyd slept in the following locations: "Hwy 9" on Monday; "Concrete apt. #3 behind bakery" on Tuesday; "McLaughlin M.V." on Wednesday; "Lafayette mom's" on Thursday; "Bro Casey Hwy 9" on Friday; and "Concrete fishing" on Saturday and Sunday. The last time that Boyd checked in he stayed in "Mount Vernon with Friend he was working on his Computer[,] Staying out of the Cold weather[,] Getting over [strep] throat."

In March 2015, the State charged Boyd with failure to register as a sex offender between January 27, 2015 and February 10, 2015. The court ordered a competency evaluation after Boyd rambled incoherently during a pretrial hearing. A month later, after Boyd was found competent to stand trial, the court held another hearing. At that hearing, the court issued a scheduling order, which Boyd signed, setting the next hearing date for November 6, 2015. While explaining the order to Boyd, however, the court misspoke—it told Boyd that he needed to appear on December 6, 2015. After Boyd failed to appear on November 6, 2015, the State amended the information to add a charge for bail jumping.

Boyd was convicted by a jury as charged and sentenced to 45 months in prison. Boyd appeals.

## ANALYSIS

*Ex Post Facto Application of Transient Registration Requirements*

Boyd argues first that application of the amended registration statute to him violates the ex post facto clause of the state and federal constitutions requiring reversal of the conviction for failure to register. We disagree.

"The ex post facto clauses of the federal and state constitutions forbid the State from enacting any law which imposes punishment for an act which was not punishable when committed or increases the quantum of punishment annexed to the crime when it was committed." State v. Ward, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994); see U.S. Const. art. I, § 10; Wash. Const. art. I, § 23. The analysis under the state constitution is the same as it is under the federal constitution. See Ward, 123 Wn.2d at 496.

-3-

"A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) disadvantages the person affected by it." Ward, 123 Wn.2d at 498 (quoting In re Pers. Restraint of Powell, 117 Wn.2d 175, 185, 814 P.2d 635 (1991)). The "sole determination of whether a law is 'disadvantageous' is whether the law alters the standard of punishment which existed under prior law." Ward, 123 Wn.2d at 498.

This court reviews constitutional issues de novo. A statute is presumed constitutional and the party challenging it has the burden to prove beyond a reasonable doubt that the statute is unconstitutional. Ward, 125 Wn.2d at 496.

Washington's community protection act, codified at RCW 9A.44.130-.140, sets out provisions for the registration of adult and juvenile sex offenders as well as community notification. In general, convicted sex offenders are required to register with the county sheriff and provide their (1) name and aliases used, (2) accurate address or, if the person lacks a fixed residence, where he or she plans to stay, (3) date and place of birth, (4) place of employment, (5) crime for which convicted, (6) date and place of conviction, (7) social security number, (8) photograph, and (9) fingerprints. RCW 9A.44.130(2)(a). Certain elements of the registration information are disseminated to the public. RCW 4.24.550.

In Ward, our Supreme Court considered and rejected the argument that the sex offender registration requirements violates the ex post facto clause. 123 Wn.2d at 498-511. Applying the three-part test for ex post facto analysis from Powell, the Supreme Court concluded first that the statute was retrospective because it was

being applied after the defendants had committed their offenses. Ward, 123 Wn.2d at 498. The Supreme Court then assumed, without deciding, that the statute was substantive instead of procedural. Ward, 123 Wn.2d at 498. The court held that the appellants were not "disadvantaged" because, while the registration requirements were burdensome, the 1991 statute did not alter the standard of punishment. Ward, 123 Wn.2d at 498-99. To reach this conclusion, the Supreme Court first looked to the legislature's findings to determine if the legislature intended for the statute to be regulatory or punitive. The court concluded that "the Legislature unequivocally stated that the State's policy is to 'assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local enforcement agencies.'" Ward, 123 Wn.2d at 499 (quoting Laws of 1990, ch. 3, § 401).

The Supreme Court continued its analysis, however, in order to determine whether the "actual effect of the statute" was "so punitive as to the negate the legislature's stated regulatory intent." Ward, 123 Wn.2d at 499. The Supreme Court based its analysis on four of the factors identified by the United States Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554 (1963): (1) whether the statute involved an affirmative disability or restraint; (2) whether it had historically been regarded as a punishment; (3) whether its operation would promote traditional aims of punishment—retribution and deterrence; and (4) whether it is excessive in relation to its nonpunitive purpose. Ward, 123 Wn.2d at 500-11.

After an exhaustive review, the Supreme Court concluded

> that the requirement to register as a sex offender under RCW 9A.44.130 does not constitute punishment. The Legislature's purpose was regulatory, not punitive; registration does not affirmatively inhibit or restrain an offender's movement or activities; registration per se is not traditionally deemed punishment; nor does registration of sex offenders necessarily promote the traditional deterrent function of punishment. Although a registrant may be burdened by registration, such burdens are an incident of the underlying conviction and are not punitive for purposes of ex post facto analysis. We hold, therefore, that the community protection act's requirement for registration of sex offenders, retroactively applied to Ward and Doe, is not punishment. Thus, it does not violate ex post facto prohibitions under the federal and state constitutions.

Ward, 123 Wn.2d at 510-11.

Subsequent to Ward, in 1999 the legislature amended RCW 9A.44.130 to add a requirement that transient sex offenders must register weekly, in person, with the sheriff:

> A person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered. The weekly report shall be on a day specified by the county sheriff's office, and shall occur during normal business hours. The person must keep an accurate accounting of where he or she stays during the week and provide it to the county sheriff upon request. The lack of a fixed residence is a factor that may be considered in determining an offender's risk level and shall make the offender subject to disclosure of information to the public at large pursuant to RCW 4.24.550.

RCW 9A.44.130(6)(b).

In State v. Enquist, 163 Wn. App. 41, 49, 256 P.3d 1277 (2011), Division Two of this court addressed an ex post facto challenge to the transient registration requirements under RCW 9A.44.130(6)(b). The Enquist court concluded—without discussing the Mendoza-Martinez factors—that the appellant failed to prove beyond

a reasonable doubt that the weekly, in-person reporting requirement violated the ex post facto clause:

> Although Enquist testified that weekly reporting was inconvenient, inconvenience alone does not make the statute punitive. Enquist has not demonstrated that the registration requirements constitute <u>punishment</u>. As the <u>Ward</u> court concluded, "[a]lthough a registrant may be burdened by registration, such burdens are an incident of the underlying conviction and are not punitive for purposes of ex post facto analysis."

<u>Enquist</u>, 163 Wn. App. at 49 (quoting <u>Ward</u>, 123 Wn.2d at 510-11). Our Supreme Court denied review.

Boyd argues that the transient registration requirements, which were not considered by the Supreme Court in <u>Ward</u>, violate the ex post facto clause. He argues that <u>Enquist</u> is wrong because it relied on <u>Ward</u> without analyzing the added transient registration requirements under the <u>Mendoza-Martinez</u> factors. While we agree that the requirement for weekly, in person registration is more burdensome than the Supreme Court considered in <u>Ward</u>, we disagree that the registration requirements violate the ex post facto clause.

As in <u>Ward</u>, we assume that the sex offender registration requirements for transients are substantive, not procedural. We also assume that these requirements, which were enacted after the acts for which Boyd was convicted, apply retroactively. Thus, the primary question we must decide is whether the registration requirements for transient sex offenders are punitive.

We start with the legislature's stated intent. As the <u>Ward</u> court held, the legislature "unequivocally stated that the State's policy is to 'assist local law enforcement agencies' efforts to protect their communities by <u>regulating</u> sex

-7-

offenders by requiring sex offenders to register with local enforcement agencies." Ward, 123 Wn.2d at 499 (quoting Laws of 1990, ch. 3, § 401). This legislative intent remains the same.

We next address each of the four relevant Mendoza-Martinez factors considered by the Supreme Court in Ward in order to determine whether the "actual effect of the statute is so punitive as to negate the Legislature's regulatory intent." Ward, 123 Wn.2d at 499.

First, do the transient sex offender registration requirements involve an affirmative disability or restraint? This factor requires us to examine "how the effects of the [statute] are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." Smith v. Doe, 538 U.S. 84, 99-100, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). The paradigmatic affirmative disability or restraint is imprisonment. Smith, 538 U.S. at 100. Here, while undoubtedly the transient registration requirements are burdensome, this does not necessarily mean that they are punitive. As Division Two in Enquist observed, "inconvenience alone does not make the statute punitive." Enquist, 163 Wn. App. at 49. Notably, while Boyd failed to report several weeks, there is no evidence in the record that reporting in person weekly interfered with his ability to get a job, find housing, or travel.

Second, have the registration requirements historically been regarded as a punishment? Boyd contends that the RCW 9A.44.130(6) registration requirements were historically considered punishment because they resemble the punishments of parole and probation. He argues that the registration requirements are a modern version of public shaming and that they may increase vigilante justice. But our

Supreme Court already determined in Ward that registration "has not historically been regarded as punishment." While the argument that registration is similar to probation or supervised release "has some force," Boyd remains free to move as he wishes and to live and work without supervision. Smith, 538 U.S. at 101-02.

Third, do the transient sex offender registration requirements promote traditional aims of punishment—retribution and deterrence? Boyd recognizes that the Ward court found that the deterrent effect of the registration requirements were a secondary effect. Boyd argues, however, that Ward predated the "deterrent and retributive effects of online community notification." He argues that posting sex offenders' information on the internet heightens the law's deterrent and retributive effects. We disagree. Ward recognized that the secondary effect of registration may deter future crimes, but it "decline[d] to hold that such positive effects are punitive in nature." 123 Wn.2d at 508. Boyd fails to show why Ward is wrong, and we see no reason to depart from Ward's reasoning here. He presents no evidence that the primary effect of the registration requirement is to shame the offender or that he is shamed by registering. Although posting Boyd's information online may deter future crimes, that, as the Supreme Court recognized in Ward, is not a punitive effect. 123 Wn.2d at 508.

Finally, are the transient sex offender registration requirements excessive in relation to their nonpunitive purpose? Under article I, section I of the Washington Constitution, the legislature may enact laws to promote the health, peace, safety, and general welfare of Washington's citizens. "'[B]road discretion is thus vested in the legislature to determine what the public interest demands under particular

circumstances, and what measures are necessary to secure and protect the same.'" Ward, 123 Wn.2d at 509 (quoting Stare v. Brayman, 110 Wn.2d 183, 193, 751 P.2d 294 (1988)). As the Ward court concluded, "the Legislature has spoken clearly that public interest demands that law enforcement agencies have relevant and necessary information about sex offenders residing in their communities." Ward, 123 Wn.2d at 509; Laws of 1990, ch. 3, § 401.[2] The legislature did not change its intent with the 1999 addition of reporting requirements for transient sex offenders. The legislature made clear its intent that

> all sex and kidnapping offenders whose history requires them to register shall do so regardless of whether the person has a fixed residence. The lack of a residential address is not to be construed to preclude registration as a sex or kidnapping offender. The legislature intends that persons who lack a residential address shall have an affirmative duty to report to the appropriate county sheriff, based on the level of risk of offending.

Laws of 1999, 1st Spec. Sess., ch. 6, § 1.[3] We do not find the law excessive in relation to a nonpunitive purpose.

Boyd fails to prove that the law is unconstitutional beyond a reasonable doubt. While the weekly, in person check-in requirement is inconvenient, Boyd cannot show that the inconvenience constitutes punishment. In addition, he cannot show beyond a reasonable doubt that the law is an unconstitutional ex post facto law.

---

[2] Laws of 1990, ch. 3, § 401 provides, in part, that "this state's policy is to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local law enforcement agencies."

[3] The legislature also deemed the 1999 amendments "necessary for the immediate preservation of the public peace, health, or safety, or support of state government and its existing public institutions, and takes effect immediately." Laws of 1999, 1st Spec. Sess., ch. 6, § 3.

*Sufficiency of the Evidence*

Boyd next challenges the sufficiency of the evidence for both of his convictions, failure to register and bail jumping.

Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt. U.S. Const. amend. XIV; Wash. Const. art. I, § 3; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). In reviewing a claim for the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201.

"In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction." State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). A defendant may challenge the sufficiency of evidence of the to-convict instruction on appeal. Hickman, 135 Wn.2d at 102.

A.  Failure to Register

Boyd argues that there was insufficient evidence to support his conviction for count I, failure to register.  We disagree.

At trial, the to-convict instruction for failure to register stated:

> To convict the defendant of the crime of failure to register as a sex offender, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on July 29, 1999, the defendant was convicted of Rape of a Child in the Third Degree;
>
> (2) That due to his conviction, the defendant was required to register in the State of Washington as a sex offender between January 27, 2015 and February 10, 2015[;] and
>
> (3) That during that time period, the defendant knowingly failed to comply with the requirement that the defendant, lacking a fixed resident, report weekly, in person, to the sheriff of the county where the defendant is registered.

As Boyd correctly argues, a date of a conviction for a sex offense is not a statutory element of the crime of failure to register.  See RCW 9A.44.132(1) ("A person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130."); RCW 9A.44.130(1)(a) ("Any adult . . . residing whether or not the person has a fixed residence . . . in this state who . . . has been convicted of any sex offense . . . shall register with the county sheriff for the county of the person's residence.").  But because the State must "prov[e] otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction," the State

needed to prove that a conviction existed on July 29, 1999. Hickman, 135 Wn.2d at 102. Boyd's sufficiency challenge fails.

Here, there was sufficient evidence that Boyd's conviction for third degree child rape existed on July 29, 1999. Boyd's judgment and sentence for third degree child rape was an exhibit in the record. It was issued on July 29, 1999 and stated that Boyd pleaded guilty to third degree child rape on "5/27/99." Boyd responds that the instruction required the State to prove that the date of his guilty plea was July 29, 1999. We disagree. The to-convict instruction only required the State to prove that a conviction existed on July 29, 1999. Indeed, Boyd's prior conviction was never disputed. His lawyer in closing argument conceded that "[t]he State has proven that Mr. Boyd is a convicted sex offender, that he was convicted in 1999 of an offense." Boyd's challenge fails.

B.      Bail jumping

Boyd argues that there is insufficient evidence to convict him of bail jumping. Again, we disagree.

To convict a person of bail jumping, the State must prove that the defendant "(1) was held for, charged with, or convicted of a particular crime; (2) was released by court order or admitted to bail with the requirement of a subsequent personal appearance; and (3) knowingly failed to appear as required." State v. Williams, 162 Wn.2d 177, 183-84, 170 P.3d 30 (2007). "In order to meet the knowledge requirement of the [bail jumping] statute, the State is required to prove that a defendant has been given notice of the required court dates." State v. Cardwell, 155 Wn. App. 41, 47, 226 P.3d 243 (2010).

-13-

Boyd concedes that the evidence was sufficient to show that he failed to appear in court for the scheduled November 6, 2015, omnibus hearing, but contends that there was insufficient evidence to support that he "knew" he was supposed to appear on that date. Boyd relies on three cases: United States v. Buchanan, 59 F.3d 914, 918 (1995) (holding that a plea agreement that waived the defendant's right to appeal was unenforceable after the district court told the defendant that he had a right to appeal his sentence); Cardwell, 155 Wn. App. at 47 (holding that there was insufficient evidence to support a bail jumping conviction where there was no evidence that Cardwell had been given notice of the arraignment hearing); State v. Bryant, 89 Wn. App. 857, 869-70, 950 P.2d 1004 (1998) (holding that evidence that defendant received written and verbal warning six days before his omnibus hearing, and posted $20,000 bail, was sufficient to prove that Bryant knew he was required to appear). None of these cases help Boyd.

On October 16, 2015, the trial court entered an order finding Boyd competent and released him on personal recognizance. The order, which was signed by Boyd, indicated that "[t]he defendant's presence is required for: "Omnibus 11-6-2015 9:00 a.m." Boyd argues on appeal that the trial court stated he needed to appear on December 6th. While the transcript of October 16, 2015, confirms Boyd's assertion, the transcript was not introduced to the jury. The only evidence before the jury was the October 16, 2015, order signed by Boyd. Because all reasonable inferences must be drawn in favor of the State, this is sufficient evidence for a rational trier of fact to conclude that Boyd knew of the requirement to appear on November 6, 2015.

*Prosecutorial Misconduct*

Boyd alleges next that prosecutorial misconduct deprived him of his right to a fair trial. We disagree.

We review allegations of prosecutorial misconduct for abuse of discretion. State v. Lindsay, 180 Wn.2d 423, 431, 326 P.3d 125 (2014). Our inquiry consists of two prongs: (1) whether the prosecutor's comments were improper and (2) if so, whether the improper comments caused prejudice. Lindsay, 180 Wn.2d at 431. To show prejudice, the defendant must show a substantial likelihood that the prosecutor's statements affected the jury's verdict. Lindsay, 180 Wn.2d at 440. The defendant bears the burden of showing that the comments were improper or prejudicial. Lindsay, 180 Wn.2d at 431.

During closing arguments, Boyd's attorney painted Boyd as unable to deal with the registration requirements and court dates: "Members of the jury, Jayson Boyd was given responsibilities. And these responsibilities might seem straightforward to you or to me, but for someone with the barriers that Mr. Boyd has, they were too much." Boyd's attorney emphasized the "chaos" and "barriers" present in Boyd's life throughout her argument.

During rebuttal, the prosecutor responded:

I'd like to remind you of the reasonable doubt instruction which tells you that a reasonable doubt arises from the evidence. Not speculation, not, oh, Mr. Boyd might have barriers, Mr. Boyd might have problems meeting his obligations, Mr. Boyd's life might have chaos.

Here's the thing. There's no evidence of any of this. None. We've heard from one witness, Ms. Jarolimek, and she testified I've been

working with this guy for over ten years, he's been getting the notifications and he's in fact been registering for part of that time.

The only evidence is that he very much has the ability to do so. He chose not to.

There's no evidence of chaos. There's no evidence of any sort of problems that he might be having that would prohibit him from coming. This is all speculation, and speculation is not an appropriate basis to find reasonable doubt.

Boyd did not object. The prosecutor continued:

Same thing with the bail jump. And again, [Boyd's] Counsel talks about chaos in his life, barriers, bla, bla, bla. No evidence of that. Well, did he really fail to appear? Was he even in court? Perhaps people are just making stuff up on these forms when the form speaks for itself and shows that Mr. Boyd was in court.

. . . .

This defendant has made poor choices, not because of barriers or chaos or issues or whatever other speculation there might be. The defendant is sitting there because he made poor choices and decided not to comply with the law, and for that reason, he should be found guilty.

Again, Boyd did not object.

After the jury retired to deliberate, Boyd moved for a mistrial based on prosecutorial misconduct:

During [the prosecutor's] first closing argument, it was normal in tone, very even and level. And the rebuttal closing argument after I had given my closing, she started out and then repeatedly throughout that closing argument, either pretending she was me or Mr. Boyd, but was kind of in a sing-song tone, a complaining child-like type tone of voice when mentioning the barriers that my client faces as a homeless person and saying "bla, bla, bla," and this was something that was repeated throughout the closing argument. And so I'd be making a motion for a mistrial based on—based on the prosecutor's tone of voice during the closing argument.

The trial court denied the motion, explaining: "I did not hear what I consider to be a mocking or derogatory tone." While the trial court agreed that the prosecutor used a

different tone than her normal speech tone, it concluded that "having listened to many, many, many closing arguments, there was nothing in the tone that I heard that was derogatory or mocking or anything that grabbed my attention as being out of line, inappropriate or unprofessional."

Boyd argues that the prosecutor committed prejudicial misconduct by mocking his lawyer's argument, his poverty, and his mental illness. A prosecutor can certainly "argue that the evidence does not support the defense theory." State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). But a prosecutor must not impugn the role or integrity of defense counsel. Lindsay, 180 Wn.2d at 431-32. "Prosecutorial statements that malign defense counsel can severely damage an accused's opportunity to present his or her case and are therefore impermissible." Lindsay, 180 Wn.2d at 432.

In Lindsay, the record demonstrated that both the prosecutor and defense counsel's conduct was obnoxious and uncivil throughout the trial. While the Supreme Court strongly chastised counsels' conduct, it did not require reversal based only on the obnoxious conduct. Lindsay, 180 Wn.2d at 431-32. The Supreme Court did, however, find that the prosecutor's statement during closing argument, that the defense counsel's argument was a "crock," was improper. The court found that the term "crock" implies deception and dishonesty and impugns defense counsel. Lindsay, 180 Wn.2d at 433-34. See also, State v. Thorgerson, 172 Wn.2d 438, 451-52, 258 P.3d 43 (2011) (prosecutor improperly impugned defense counsel by referring to argument as "bogus" and involving "sleight of hand").

Here, the prosecutor's references to Boyd's "barriers" and chaotic life are not improper remarks about his homelessness, poverty, or mental illness because they rebut the very defense advanced by Boyd's counsel—that complying with the law was "too much" for him because of his "barriers." But we find that the prosecutor impugned defense counsel by stating "And again, [Boyd's] Counsel talks about chaos in his life, barriers, bla, bla, bla. No evidence of that." Using "bla, bla, bla" to refer to an opposing counsel's argument is both disrespectful and dismissive. Although the statement does not imply deception or dishonesty like "crock," it implies that the arguments are unworthy of consideration and may be dismissed offhand. We find the statement was improper.

In context, however, Boyd does not demonstrate that there was a substantial likelihood that the statement affected the jury's verdict. Lindsay, 180 Wn.2d at 440. In Lindsay, there were numerous instances of misconduct in addition to calling the defense argument a "crock." The prosecutor in Lindsay also committed misconduct during argument by shifting the burden of proof, minimizing the burden of proof, and expressing personal opinions of credibility and guilt, and making inaudible comments to the jury. Lindsay, 180 Wn.2d at 434-40. The Supreme Court found that it was the combined effect of all of the misconduct that likely influenced the jury's verdict. Lindsay, 180 Wn.2d at 442-43. Here, in contrast, while the prosecutor did impugn Boyd's counsel, the improper comments were minimal, and the trial court found that they were not mocking, derogatory, or out of line.

The court did not abuse its discretion by denying Boyd's motion for a mistrial.

*Reasonable Doubt Instruction*

Boyd argues finally the trial court erred in giving its instruction defining "reasonable doubt." We disagree.

The trial court used WPIC 4.01 to define reasonable doubt. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL, 4.01 (4th ed. 2016) (WPIC). Instruction 2, in relevant part, read:

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Boyd argues that use of the final sentence with the "abiding belief in the truth" language is constitutionally defective because it invites the jury to undertake an impermissible search for the truth.

This instruction was proper. Our Supreme Court approved the use of the "abiding belief in the truth" language as part of the reasonable doubt instruction in State v. Pirtle, 127 Wn.2d 628, 658, 904 P.2d 245 (1995). In State v. Bennett, our Supreme Court again approved use of WPIC 4.01 and concluded that it allows both the State and defendant to argue their theories of the case. 161 Wn.2d 303, 317, 165 P.3d 1241 (2007). The Supreme Court directed trial courts to use WPIC 4.01 in all criminal cases. Bennett, 161 Wn.2d at 318. This court has consistently affirmed use of WPIC 4.01, including the "abiding belief in the truth" language. See State v. Fedorov, 181 Wn. App. 187, 199-200, 324 P.3d 784 (2014); State v. Osman, 192

No. 74933-1-I/20

Wn. App. 355, 371-73, 366 P.3d 956 (2016); State v. Jenson, 194 Wn. App. 900, 902, 378 P.3d 270 review denied, 186 Wn.2d 1026 (2016).

The trial court's instruction accurately defined reasonable doubt and clearly communicated the State's burden of proof.

We affirm Boyd's conviction.

_____, J.

WE CONCUR:

_____

_____

<u>State v. Boyd</u>, 74933-1-I

BECKER, J. (dissenting) – I respectfully dissent. In 1998, when appellant Jayson Boyd committed a sex offense, registrants had no in-person reporting requirements. Now, a registrant like Boyd who lacks a fixed residence must report in person to the county sheriff at least 52 times each year. If Boyd had not been subjected to the statutory amendment enacted in 1999, he would have been free of the registration statute long ago and the legal jeopardy it has put him in repeatedly for failure to report. His 2015 conviction for failure to show up at the sheriff's office to provide a weekly update is an ex post facto violation and should be reversed and dismissed.

In 1998, when Boyd was 23 years old, he had sex with a 15-year-old and was convicted in Skagit County of third degree child rape, a class C felony. He was given a standard range sentence of 15 to 20 months. Under the then-existing version of the registration statute, a class C felony sex offense conviction carried with it a registration requirement that ended 10 years after the offender's release from confinement. Former RCW 9A.44.140(1)(c) (1997). Those who were subject to the statute were required to register with the county sheriff, to provide an "address" and other information, and to give the sheriff written notice of any change of "residence address" within a few days of moving. Former RCW 9A.44.130(1)-(4) (1997). Failing to register or update information when a change occurred was defined as either a class C felony or gross misdemeanor. Former RCW 9A.44.130(7) (1997). There was no requirement for in-person reporting.

In 1999, legislators learned that the statute as written did not apply to sex offenders who lacked a fixed residence. State v. Pickett, 95 Wn. App. 475, 479-80, 975 P.2d 584 (1999). The defendant in Pickett was homeless and lived on the street, sometimes staying overnight in parks and sometimes on sidewalks. Although he registered an address in Everett, he was later found to be staying in and around Westlake Park in Seattle. He was charged and convicted of failing to register. This court reversed the conviction for insufficiency of the evidence. We held that the statute did not contemplate the situation of a person who did not have a "residence" as that term is commonly understood. Pickett, 95 Wn. App. at 479.

Responding to Pickett, the legislature amended the statute in 1999 to apply to sex offenders "whether or not the person has a fixed residence." LAWS OF 1999, 1st Spec. Sess., ch. 6, § 1 and 2; former RCW 9A.44.130(1) (1999). Transients were required to report to the sheriff in person weekly or monthly, depending on their level of risk. Former RCW 9A.44.130(6)(b) (1999).

More recent amendments have made the reporting requirement still more onerous. As of 2002, transient offenders must report in person once a week regardless of their risk level. Former RCW 9A.44.130(6)(b) (2002). Since 2010, failure to register is a class B felony when the offender has one or more previous convictions for failure to register. RCW 9A.44.132(1)(b). Another change is that all transient offenders are now subject to disclosure of information to the public at large, regardless of their risk assessment. RCW 9A.44.130(6)(b).

2

Boyd is required to make weekly in-person reports every Monday between 8:30 a.m. and noon at the Skagit County Sheriff's Office in Mt. Vernon. During these weekly check-ins, Boyd must provide a written list of the places where he has slept for the past week. Examples of Boyd's entries include "Hwy 9," "Concrete apt. #3 behind bakery" and "Concrete fishing." Boyd has occasionally missed his weekly visit to the sheriff's office. He has convictions for failure to register in 2009, 2010, 2013, and, most recently, in 2015—the conviction challenged in this appeal. For the 2015 conviction, Boyd is currently serving a 45-month prison term.

Boyd's duty to check in every week in person after he is released will continue for many years and perhaps for his entire life if the statute as presently written is applied to him. The duty to register continues indefinitely for a sex offender whose conviction was for a class A felony or who has a previous conviction for a sex offense. RCW 9A.44.140(1). It continues for 15 years from the last date of confinement if the conviction is for a class B felony and the offender has no previous sex offense convictions. RCW 9A.44.140(2). For an offender whose only sex offense conviction is a class C felony, the duty to register can end 10 years after release from confinement. RCW 9A.44.140(3). But the 10-year and 15-year end dates present a moving target. They arrive only if the person spends the 10- or 15-year period in the community without being convicted of a "disqualifying offense" during that time period. RCW 9A.44.140(2) and (3). A disqualifying offense is a conviction for any felony. RCW 9A.44.128(3). A conviction for failure to register is a felony. Even though Boyd's

initial sex offense conviction was for a class C felony, every time he is convicted of failure to register, the clock starts anew and his duty to report weekly is extended. An offender who has a duty to register may petition for relief from the reporting requirement under narrow circumstances set forth in RCW 9A.44.142, but even in those circumstances, relief is difficult to obtain and entirely discretionary. RCW 9A.44.142(4).

The question before this court is not whether the registration statute is unconstitutional as presently written. The question is whether the statute as presently written is unconstitutional when applied to persons without a fixed residence whose offenses were committed before 1999. An otherwise valid statute or regulation becomes an unconstitutional ex post facto violation when it "increases the quantum of punishment annexed to the crime when it was committed." State v. Ward, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994). The quantum of punishment annexed to Boyd's crime when it was committed has been increased by amendments to the registration statute.

The 1999 amendment requiring weekly in-person reporting makes Washington's statute perhaps the most burdensome in the country. The Supreme Court upheld an Alaska registration statute against an ex post facto challenge in part because it did *not* require in-person updates. Smith v. Doe, 538 U.S. 84, 101, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Washington's statute now goes well beyond requirements that other jurisdictions have held unconstitutional in ex post facto challenges. See Does #1-5 v. Snyder, 834 F.3d 696, 703 (6th Cir. 2016) (quarterly or annual in-person registration now required

by Michigan is an affirmative disability converting the statute from regulatory to punitive), cert. denied, 86 U.S.L.W. 3149 (U.S. Oct. 2, 2017) (No. 16-768); State v. Letalien, 2009 ME 130, 985 A.2d 4, 18 (quarterly in-person registration for life is an affirmative disability); Doe v. State, 167 N.H. 382, 392, 404-05, 111 A.3d 1077 (2015) (revisiting the statute in light of changes making it punitive, including requirement for quarterly in-person registration); Starkey v. Okla. Dep't of Corr., 2013 OK 43, ¶¶ 49, 57, 305 P.3d 1004, 1022-25 (in-person registration required at pain of criminal punishment is affirmative disability); Commonwealth v. Muniz, 164 A.3d 1189, 1210-11 (Pa. 2017) (monthly in-person registration requirement is an affirmative disability), petition for cert. filed, No. 17-575 (U.S. Oct. 13, 2017).

Imprisonment is the paradigmatic affirmative disability or restraint. Smith, 538 U.S at 99-100. As Boyd's case illustrates, Washington's weekly reporting requirement can readily lead to an unending cycle of imprisonment for transient offenders, particularly those who are dealing with mental health issues. Though Boyd's only crime of sexual misconduct was committed when he was 23, he has been imprisoned four times since then for failing to comply with the amended registration requirements. If his history is any indication, he will continue to be imprisoned as punishment for the crime of failure to register—further extending his reporting term.

The statute in effect when Boyd committed a sex offense merely required him to register. The requirement to register, by itself, is not historically regarded as punishment. State v. Ward, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994). But when a homeless offender has to travel in person to the sheriff's office every

5

Monday morning to report all overnight locations during the past week, the duty resembles a requirement to meet periodically with a probation or parole officer, a sanction historically regarded as punishment. See Muniz, 164 A.3d at 1211-13. And the failure to report in person can lead to incarceration, just as failure to comply with a probation requirement can lead to revocation and imprisonment. The Alaska statute considered in Smith was held not to be punitive in part because it did *not* contain mandatory conditions comparable to probation. Smith, 538 U.S at 101. The Snyder court stated that while Michigan's offender registration law "is not identical to any traditional punishments, it meets the general definition of punishment, has much in common with banishment and public shaming, and has a number of similarities to parole/probation." Snyder, 834 F.3d at 703. In Letalien, a new requirement that offenders register for life was seen by the court as consistent with sanctions historically considered punishment. The court held that it was an ex post facto violation when applied to offenders whose registration obligation had been 5 to 15 years under the statute in effect when they were convicted. Letalien, 985 A.2d at 19-21.

Another consideration in the ex post facto analysis is whether the transient registration requirements are excessive in relationship to their nonpunitive purposes. Aside from failing to register, Boyd has not been charged with a sex offense in 19 years. Yet once he is released from prison, he must appear in Mt. Vernon every Monday between 8:30 a.m. and noon, 52 weeks a year, for a minimum of 10 more years no matter how far away it may be or how hard it is to

6

get there.[1] RCW 9A.44.140. Assuming at least a 10-year duration, that is a minimum of 520 visits to the sheriff's office. Failure to appear at any one of these check-ins will expose Boyd to prosecution for a class B felony, and a conviction will begin the cycle anew.

The inability of offenders to petition for relief is another factor indicating that sex offender registry requirements are excessive in relation to any nonpunitive purpose. Doe, 111 A.3d at 1100. Similarly, a system that fails to consider the threat posed by an offender is evidence of excessiveness. Starkey, 305 P.3d at 1029-30. To avoid criminal prosecution, homeless registrants in Washington must continue reporting, week after week for at least 10 or 15 years, no matter what evidence they may be able to offer of rehabilitation or incapacitation.

The punitive excess of the reporting requirements our state imposes on homeless persons is particularly glaring when compared to the relatively minor burden imposed on offenders who register from a fixed residence. Those individuals need only notify the sheriff by mail within three days of a change in registration information. RCW 9A.44.130. There is no requirement to report in person. In my judgment, the weekly reporting burden imposed on homeless individuals outweighs the nonpunitive purpose of letting the sheriff know, for

---

[1] In reading RCW 9A.44.140, I am not certain whether Boyd will be required to report weekly for 10 years, 15 years, or indefinitely upon the conclusion of his current prison term. As this question is not before the court, I do not attempt to answer it.

example, that on the previous Tuesday the individual in question stayed overnight behind the bakery in Concrete.

Our statute has grown steadily harsher, especially as applied to homeless offenders. I believe it is time to reconsider the ex post facto analysis of the statute in light of the changes since Ward. I would join the jurisdictions holding that frequent in-person reporting requirements render a registration statute so punitive that applying it retroactively violates the constitution. I would reverse Boyd's conviction and remand for dismissal with prejudice.

_Becker, J._